# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

RONALD CUTHBERTSON,   Case No. 1:11-cv-582

    Plaintiff,   Dlott, J.
v.   Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

On August 24, 2011, Plaintiff initiated this appeal in order to challenge a decision of the Commissioner of Social Security under the Social Security Act. *See* 42 U.S.C. §405(g). Plaintiff was represented by counsel at the administrative level, (*see* Doc.6-2 at 9), but proceeds *pro se* in this Court. After initially failing to file a timely "Statement of Errors," Plaintiff complied with a "show cause" order (*see* Docs. 10, 13), and filed what has been construed as a Statement of Errors. (*See* Doc. 12).

Plaintiff seeks an award of disability benefits by this Court. Construing Plaintiff's claims liberally, he alternatively seeks remand for further review under sentence four, and or remand for consideration of new evidence under sentence six.[1] I recommend that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record. In addition, I conclude that remand under either

---

[1] A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). This Court may consider the new evidence submitted by Plaintiff only for purposes of a requested sentence six remand, not for purposes of evaluating whether substantial evidence existed for the Defendant's previous denial of benefits. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

sentence four or sentence six is unnecessary.

**I. Summary of Administrative Record**

Plaintiff previously was awarded Disability Insurance Benefits (DIB) for a closed period between May 2004 and March 2008, at which time the Commissioner ceased payments. The basis for the cessation of benefits is not entirely clear from the administrative record,[2] but appears to have been due to a determination that Plaintiff was no longer disabled. (*See* Doc. 12 at 12, attached copy of 2/3/12 notice stating that benefits "were stopped because you were found to no longer be disabled in 03/08.").

In March 2008, Plaintiff reapplied for benefits, alleging a disability onset date of November 2, 2003, later modified to March 1, 2008, due to both physical and mental impairments. (Tr. 8, 143-145, 158). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On May 18, 2010, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 24-74). At the hearing, Administrative Law Judge ("ALJ") Samuel A. Rodner heard testimony from Plaintiff and from a vocational expert. On June 25, 2010, ALJ Rodner denied Plaintiff's applications for benefits in a written decision. (Tr. 5-18).

Plaintiff was 31 years old at the time of his alleged disability onset date. He dropped out of high school after the eleventh grade, obtained a GED, and took some college course work, but did not obtain a post-secondary degree. (Tr. 17, 35). The ALJ

---

[2] At the evidentiary hearing, Plaintiff testified to periods of incarceration. Because benefits are not payable to a claimant who is incarcerated, the ALJ questioned whether the termination of benefits might have been related to Plaintiff's incarceration. No clear answer was evident from the record, as reflected in the ALJ's opinion. (Tr. 8, 32-34).

found that Plaintiff has the following severe impairments: "polysubstance abuse/dependence, mostly alcohol, marijuana, and opiate abuse, substance induced mood disorder, schizoaffective disorder, bipolar disorder, personality disorder NOS, medial meniscus tear in the left knee, and headaches." (Tr. 10). After concluding that Plaintiff did not meet or equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11), the ALJ further found that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of medium work. The ALJ added the following restrictions:

> lift/carry 50 pounds occasionally and 25 pounds frequently; stand one hour at a time and 6 hours total in an 8-hour workday, assuming normal breaks; no limitations on sitting or walking; occasional kneeling and squatting; due to his headaches the claimant should avoid concentrated exposure to significant noise and lights that are brighter than those usually found in offices or factories; when sober and medication compliant the claimant can work at jobs where there is minimal interaction with coworkers, supervisors and the public.

(Tr. 12). Based upon testimony from the vocational expert and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, although Plaintiff could not perform his prior work as a janitor, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 17). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to DIB. (Tr. 18).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. Mindful of Plaintiff's *pro se* status, the Court liberally construes Plaintiff's claims as asserting that the ALJ erred by: (1) failing to fully consider his knee impairment; and (2) failing to consider his complaint of hemorrhoids. In favor of additional review, Plaintiff also seeks to have this Court consider

3

additional medical evidence, including an MRI and a knee surgery performed in April 2011. Defendant has filed a response in opposition to Plaintiff's statement of errors (Doc. 15), to which Plaintiff filed no reply.

As discussed below, the Court finds no error requiring reversal or remand in either of the claims specifically identified by Plaintiff, nor does the Court find remand for additional review under sentence six to be appropriate.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also

exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520.

Plaintiff's claims of error focus on Steps 4 and 5 of the sequential analysis, concerning the ALJ's finding that Plaintiff's RFC does not preclude him from working a limited range of medium work. I find no error, because the ALJ's analysis is supported by substantial evidence in the record as a whole.

**B. Plaintiff's Claims of Error**

**1. Plaintiff's Knee Impairment**

At the evidentiary hearing, the ALJ asked Plaintiff: "What would make it difficult or impossible for you to work?" Plaintiff responded "[m]y leg," and specifically identified his left knee, which he stated had been injured during an altercation approximately a year prior to the hearing date. (Tr. 43). Plaintiff asserts that the date of his knee injury was January 23, 2009. (Doc. 12 at 2 and 5; Tr. 183). As evidence that his knee impairment is more disabling than found by the ALJ, Plaintiff has attached to his statement of errors copies of a January 2010 MRI, and treatment notes from 2009. (Doc. 12 at 7-9, 11).

Although the January 2010 MRI does not appear in the administrative record, the treatment notes submitted by Plaintiff do appear in the record and were considered by the ALJ. It is true that the January 2010 MRI report reflects an ACL tear, but the administrative record contains evidence of a second MRI, dated May 2010, (Tr. 28), that reflects the same ACL tear. The ALJ also heard Plaintiff's testimony about his knee injury and the fact that the ACL tear was likely to have occurred at the time of the initial injury in 2009. Plaintiff testified that when his knee was first injured, only x-rays were taken, which would not have revealed his ACL tear. (Tr. 45).

Based upon Plaintiff's "medial meniscus tear in the left knee," the ALJ limited Plaintiff to only occasional kneeling and crawling, but placed no restrictions on Plaintiff's ability to sit or walk. (Tr. 12). In this appeal, Plaintiff challenges the ALJ's failure to find him totally disabled due to his knee impairment. Plaintiff clearly believes that the fact that he had a diagnosis of an ACL tear entitles him to benefits. He asks: "[W]hy the [2010] MRI

6

was ...not taken seriously even though the [ALJ] knew that the ACL was torn?" (Doc. 12 at 3).

Substantial evidence supports the limitations found by the ALJ, and does not support total disability based upon Plaintiff's knee impairment. The January 2009 treatment notes near in time to Plaintiff's injury reveal nothing more than swelling, with no evidence of fracture. Treatment notes from May 2009 showed only slight swelling in Plaintiff's left knee, normal gait, full motor strength, and full sensation. (Tr. 702-703). The ALJ also discussed treatment notes concerning the 2010 findings of an ACL tear. (Tr. 11, 809). Therefore, the records attached to Plaintiff's statement of errors (nearly all of which were before the ALJ) offer nothing to contradict the ALJ's conclusion. (See Doc. 12 7-9, 11). In addition to reviewing medical records, the ALJ heard Plaintiff's own testimony concerning the degree of limitation resulting from his knee injury. Plaintiff testified that he could stand for one hour without a break, and that he had no significant problems with walking. (Tr. 47). Plaintiff similarly reported on his application for benefits that he can walk "a mile or 2" without needing to stop and rest. (Tr. 203). Although Plaintiff also testified that he could only sit for an hour at a time before his knee started to hurt (Tr. 47), the ALJ found no medical records or evidence to support any restriction on sitting as a result of the knee impairment. (Tr. 16).

Plaintiff complains generally that at the time of his original injury, he did not receive proper surgical care for his knee, but instead received only a brace and crutches. However, at the hearing Plaintiff testified that he chose not to wear the brace and did not use the crutches provided because he was "mad" and "didn't want to." (Tr. 45-46). In fact, Plaintiff's daily activities confirm the lack of any significant impairments. He reported that

he could mop, vacuum, do dishes, enjoys cooking (Tr. 180), goes to the grocery store, volunteers at several soup kitchens (Tr. 179), and plays musical instruments as a "reggae artist" with his friends from time to time. (Tr. 57-61, 179). He can perform all normal household chores, both indoors and outdoors. (Tr. 201). Plaintiff testified that he lives with his parents and that they do most of the chores, but admitted he could do virtually all household chores if asked to do so. (Tr. 17). Therefore, the Court finds no error relating to the ALJ's assessment of Plaintiff's knee injury.

### 2. Hemorrhoids/ Miscellaneous

Plaintiff's statement of errors contains additional discussion concerning the lack of adequate treatment for his hemorrhoids. Plaintiff complains that he suffers from one large hemorrhoid which can only be treated by surgery, but that the surgeon to whom Plaintiff was referred does not accept Plaintiff's Medicaid Insurance. (Doc. 12 at 2). In addition to suffering from hemorrhoids, Plaintiff briefly alludes to his past history of bipolar disorder and schizophrenia. He alleges that he "went to University Hospital 3/14/09 complaining of not receiving pills as well as other complaints," but the physician "boasted about being able to get me to focus my complaint to blood in my stool." (Doc. 12 at 2, 10).

The medical record to which Plaintiff refers is attached to Plaintiff's statement of errors, but also appears in the administrative record. (*See* Tr. 634). In that March 2009 record, identified as an "emergency department discharge note," the emergency discharge physician refers to Plaintiff's "strong history of psychiatric disorder including bipolar disorder who comes in with multiple complaints." Aside from the general reference to unspecified "multiple complaints," it appears that the focus of the visit (or at least its conclusion) was

8

on Plaintiff's hemorrhoid treatment. The ER physician states he was "able to get [Plaintiff] to focus...on blood in the stool and burning with urination." (Tr. 634). This record simply does not support the need for any additional limitations in Plaintiff's RFC.

### 3. Sentence Six Remand Not Required

Pursuant to Sentence Six, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is both new, in that it was "not in existence or available to the claimant at the time of the administrative proceeding," and "material," meaning there is "a reasonable probability that the Secretary would have reached a difference disposition." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citations omitted); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). The plaintiff must also establish good cause for his failure to present the evidence to the ALJ. *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Defendant argues that the additional records attached to Plaintiff's statement of errors do not require remand under Sentence Six, because Plaintiff cannot show that the records were either "new" or "material" to the ALJ's decision. See 42 U.S.C. §405(g); *King v. Sec'y of Health & Human Servs.*, 897 F.2d 203, 206 (6th Cir. 1990); *Abbott v. Sullivan*, 905 F.2d 918, 925 n. 5 (6th Cir. 1990). The Court agrees that Plaintiff has failed to satisfy his burden of showing that this evidence was unavailable prior to the hearing. In fact, as stated, nearly all of the documents attached to Plaintiff's statement of errors were part of

9

the administrative record considered by the ALJ. The only medical evidence[3] that does not appear to have been considered was the MRI from January 2010 (Doc. 12 at 11), but Plaintiff offers no explanation at all for his failure to enter this note into the evidentiary record presented to the ALJ. In addition, the January 2010 report does not differ in substance from the May 2010 MRI result that was fully considered by the ALJ.

Plaintiff also asserts that he should be found to be disabled based upon the fact that his knee "surgery wasn't done til April 2011," (Doc. 12 at 2). Plaintiff alleges that the "surgery on my left knee has made the situation worser [sic]," and that he has sought "another MRI" but that his request has been ignored. (*Id.*). Plaintiff has not tendered any medical records relating to the alleged surgery, nor has he tendered any other evidence to support his allegation that his knee condition has worsened.

To the extent that Plaintiff underwent knee surgery 10 months after the ALJ's written decision, that surgery is "new" evidence that could not have been considered prior to the May 2010 hearing date. However, the fact that Plaintiff alleges that his knee condition worsened *after* the surgery in 2011 does not support a reversal of the ALJ's conclusion that Plaintiff was not disabled as of the date of the ALJ's decision. Given the abundant evidence in support of the ALJ's determination that Plaintiff experienced relatively few limitations from his knee condition, and the lack of any contrary evidence, I conclude that Plaintiff has failed to satisfy his burden to show the need for remand under Sentence Six for consideration of "new" and "material" evidence. Neither the January 2010 MRI nor the

---

[3] The only other document submitted by Plaintiff to this Court that does not appear in the administrative record is an SSA informational letter, dated February 3, 2012, advising Plaintiff that his previous period of benefits was terminated when he was found to no longer be disabled in March 2008. The basis for the prior termination of benefits is not relevant to the issue of whether the ALJ's denial of Plaintiff's current application for benefits is supported by substantial evidence.

10

allegation of surgery in April 2011 are sufficiently material to alter the ALJ's decision in this case. To the extent that Plaintiff believes his knee condition worsened and became disabling after his April 2011 surgery, he is free to submit a new application for benefits. *See, e.g.*, *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992).

### 4. General Complaint Regarding Evidence

While not set forth as a separate claim, the Court would be remiss were it not to discuss this *pro se* Plaintiff's general complaint that his doctors failed to support his disability claim. "Do Doctors have a responsibility to their patients that would insist their imput [sic] for SSI or SSDI issues?" (Doc. 12 at 3).

The short answer to Plaintiff's query is "no," because the Plaintiff carries the burden to place sufficient evidence in the record to support his claim of disability during the first four steps of the five-step sequential analysis, and ultimately, to prove entitlement to benefits. *See generally Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525 (6th Cir. 1997). Plaintiff was represented by counsel at the administrative hearing, and counsel had ample opportunity to supplement the record with doctors' statements, treatment notes, and opinions. *Accord Wright-Hines v. Comm'r of Soc. Sec.,* 597 F.3d 392 (6th Cir. 2010)(pro se litigant had duty to develop record when represented by counsel at administrative stage). However, as the ALJ noted, [t]here are no mental or physical residual functional capacity opinions either from treating sources or the DDS" in the administrative record." (Tr. 16).

The only mental RFC form in the record was completed by a non-examining psychologist, Dr. Patricia Semmelman. (Tr. 339). Based upon Dr. Semmelman's opinions

and other medical evidence, the ALJ determined that Plaintiff's mental limitations were relatively few when he was "sober and compliant." (Tr. 16). As discussed above, Plaintiff's physical limitations were also relatively minor. In fact, "[n]o treating or examining source has indicated that the claimant is totally disabled from all work activity." (Tr. 17). The ALJ also found Plaintiff to be only "partially" credible, noting a number of records that indicated that Plaintiff sought emergency room care "partly or solely for disability purposes," a record in which an examiner noted Plaintiff "appears to be malingering," and frequent notes concerning Plaintiff's noncompliance with prescribed medications, despite being provided with free samples. (Tr. 16). Plaintiff is not entitled to reversal or remand based upon his attorney's alleged failure to obtain from his physicians additional opinion evidence that Plaintiff believes might have supported his disability claim.

### III. Conclusion and Recommendation

Because Plaintiff has failed to demonstrate any error by the ALJ, and because the Commissioner's determination is supported by substantial evidence in the administrative record, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED,** and Plaintiff's construed alternative request for a sentence six remand be **DENIED**;

2. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                       *s/ Stephanie K. Bowman*
                                       Stephanie K. Bowman
                                       United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RONALD CUTHBERTSON,   Case No. 1:11-cv-582

    Plaintiff,   Dlott, J.
v.   Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).